# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### April 24, 2007 Session

## STATE OF TENNESSEE v. THOMAS HARVILLE, JR.
### Appeal from the Criminal Court for Sullivan County
### No. S49,750    Phyllis H. Miller, Judge

---

### No. E2005-02108-CCA-R3-CD - Filed February 15, 2008

---

In October 2004, a Sullivan County grand jury indicted the defendant, Thomas Harville, Jr., on one count of violating his status as a habitual motor vehicle offender, a Class E felony. Following a June 2005 jury trial in Sullivan County Criminal Court, the defendant was convicted on the sole count of the indictment and sentenced to two years as a Range I, standard offender, with the defendant to serve eighty days in jail and the balance of his sentence on community corrections. The defendant appeals, alleging that the trial court: (1) improperly admitted the preliminary hearing testimony of a police officer when the state failed to show that the witness was unavailable at trial; (2) improperly determined that the state could impeach the defendant with a prior felony conviction for evading arrest; and (3) improperly sentenced the defendant. After reviewing the record, we conclude that the defendant has waived the first issue on appeal and that the trial court committed no error as to the other two issues. Accordingly, we affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed.

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE, J., joined. JERRY L. SMITH, J., filed a separate opinion concurring in part and dissenting in part.

George Todd East, Kingsport, Tennessee, for the appellant, Thomas Harville, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; William Harper, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

At trial, Fritz Fallin testified that on December 27, 2003, he was driving on Stone Drive toward Lynn Garden Drive in Kingsport, Tennessee. Around 11:00 p.m., he noticed a tan truck

speeding and traveling in the wrong direction on Lynn Garden Drive. Fallin contacted police on his cellular phone and turned around to follow the speeding truck. The truck turned into a Shell gasoline station, and the truck's driver then exited the vehicle. The police arrived on the scene a short time later.

Over the defendant's objection, the transcript of the preliminary hearing was entered into evidence as the testimony of Officer Matt Cousins of the Kingsport Police Department because the trial court determined that Officer Cousins was unavailable at trial due to his being on active military duty in Iraq. At the preliminary hearing, Officer Cousins testified that he responded to the call at the Shell station. When Officer Cousins arrived in the area of Lynn Garden Drive and Virginia Street, he saw a tan Chevrolet truck turning right onto Virginia Street from Lynn Garden Drive. He then saw the truck enter the parking lot of a Shell station. After the truck pulled into a parking space, the defendant exited the driver's side and walked into the store. Officer Cousins questioned both the defendant and a passenger in the vehicle. The defendant denied driving the truck, and the passenger did not tell Officer Cousins that the defendant had been driving the truck.

Corporal Todd Harrison with the Kingsport Police Department testified that he also responded to the call at the Shell station the evening of December 27, 2003. When he arrived at the scene, he observed Officer Cousins standing outside a tan truck, talking with the defendant. Corporal Harrison spoke briefly with Fallin about what he had seen that night. Corporal Harrison then relayed this information to Officer Cousins.

Raymond Winters, the Sullivan County Clerk of Circuit Court, testified that on February 28, 1994, a judgment was entered declaring the defendant to be a habitual motor vehicle offender.

Rick Brooks, testifying for the defendant, said that he owned the truck in question. He testified that on the evening of December 27, he and the defendant were "hanging out" at the defendant's house, with the defendant drinking three beers during the evening. The defendant then received a call from his wife, asking that the two men pick her up from her parents' house. The two men then left the defendant's house. Brooks testified that although the defendant wanted to drive the truck, he actually drove the truck that evening. Brooks said that he made a wrong turn at the intersection of Lynn Garden Drive and Stone Drive which resulted in the truck traveling in the wrong direction on Lynn Garden Drive. Brooks then turned around and sped up to at least sixty-five miles per hour because he wanted to see how fast the truck would run. Brooks then stopped at a Shell station because the defendant wanted some cigarettes. According to Brooks, he did not turn onto Virginia Street to get to the gasoline station. Once Brooks pulled into the parking lot, he let the defendant out of his truck on the driver's side because the passenger-side door was difficult to open. Brooks testified that he told more than one of the officers, including Officer Cousins, that he was driving the truck.

At the conclusion of the case, the jury convicted the defendant. The trial court sentenced the defendant to two years on community corrections, with the defendant to serve eighty days in jail. The trial court later amended the defendant's sentences, granting the defendant good time credit for

twenty-five percent of the eighty days. This appeal follows.

## ANALYSIS

### *Unavailable Witness*

The defendant first argues that the trial court improperly admitted the preliminary hearing testimony of Officer Cousins at trial because the state failed to establish that the witness was unavailable. The state counters that the record does not support the defendant's claim and that the preliminary hearing transcript was properly admitted into evidence. The defendant did not object to the admission of the transcript on the basis that the state did not prove that Officer Cousins was unavailable. As a result, we conclude that the defendant has waived the issue on appeal.

The Tennessee Rules of Evidence define hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). Hearsay is not admissible unless an exception to the hearsay rule applies. Tenn. R. Evid. 802.

One such exception to the hearsay rules is the "former testimony" exception. According to the Rules of Evidence, the former testimony of a declarant who is unavailable as a witness is admissible. Tenn. R. Evid. 804. Unavailability can be satisfied in several ways, including if the declarant "is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance by process." Tenn. R. Evid. 804(a)(5). As relevant to this case, the Rules of Evidence define former testimony as "[t]estimony given as a witness at another hearing of the same or different proceeding . . . if the party against whom the testimony is now offered had both an opportunity and a similar motive to develop the testimony by direct, cross, or redirect examination." Tenn. R. Evid. 804(b)(1). A preliminary hearing transcript "is precisely the type of former testimony contemplated under [Rule 804(b)(1)]." State v. Michael Dwayne Hatfield, No. 03C01-9307-CR-00233, 1994 WL 102072, at *3 (Tenn. Crim. App., at Knoxville, Mar. 29, 1994); see Tenn. R. Evid. 804(b)(1), Advisory Comm'n Cmts.

Additionally, both the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution give the defendant the right to confront all witnesses against him. Regarding the Confrontation Clause, the Tennessee Supreme Court has determined:

> When the prosecution seeks to introduce a declarant's out-of-court statement, and a defendant raises a Confrontation Clause objection, the initial determination under Crawford[v. Washington, 541 U.S. 36, 68, 124 S. Ct. 1354, 1374 (2004)] is whether the statement is testimonial or nontestimonial. If the statement is testimonial, then the trial court must determine whether the declarant is available to testify. . . . If the

declarant is unavailable, the trial court must determine whether the accused had a prior opportunity to cross-examine the declarant about the substance of this statement. Id. at 68, 124 S. Ct. at 1354. If the accused had such an opportunity, the statement may be admissible if it is not otherwise excludable hearsay. If the accused did not have this opportunity, then the statement must be excluded.

State v. Maclin, 183 S.W.3d 335, 351 (Tenn. 2006). See also State v. Summers, 159 S.W.3d 586, 597 (Tenn. Crim. App. 2004) ("[T]he State must show that the declarant is truly unavailable after good faith efforts to obtain his presence" and that "the evidence carries its own indicia of reliability.").

In this case, the defendant cross-examined Officer Cousins during the pretrial hearing, so the defendant's right to confront the witness was satisfied. The defendant argues on appeal that the state did not establish that the witness was in fact unavailable, as is required under Crawford, Maclin, and Summers, but the defendant did not raise this argument at trial. Instead, the record reflects that at trial, the prosecutor indicated that Officer Cousins was serving in Iraq and would be unavailable to testify at trial. The prosecutor stated that he was in possession of an e-mail from Officer Cousins's commanding officer, which indicated that the earliest Officer Cousins would return to Tennessee would be five months from the trial date. The prosecutor inquired whether to file the copy of the e-mail from the commanding officer as an exhibit. Defense counsel did not question whether the witness was in Iraq and therefore unavailable; furthermore, defense counsel did not ask to exhibit the e-mail or even view it, according to the record. Rather, the defendant based his objection to the pretrial statement on the fact that the witness's "demeanor wouldn't be here for the jury to follow," and that he would be unable to cross-examine the witness in light of "some questions that may develop through the course of the trial." Such concerns have been addressed by the Tennessee Supreme Court in adopting and interpreting the Rules of Evidence, including the hearsay exceptions, and therefore the trial court properly ruled that the pretrial statement was admissible under the former testimony hearsay exception. In short, because the defendant did not dispute the fact that Officer Cousins was unavailable at trial, he may not raise the issue on appeal. See Tenn. R. App. P. 36(a) (explaining that a party's failure to raise an objection at trial waives the issue on appeal). The defendant is therefore denied relief on this issue.

*Impeachment of Appellant with Prior Conviction*

The defendant next contends that the trial court erred by ruling that the state could impeach him with his 2000 felony conviction for evading arrest if he took the stand. The defendant argues that this ruling prejudiced him because it "prevented" him from testifying at trial. The state disagrees, arguing that the record supports the trial court's decision. We agree with the state.

Rule 609 of the Tennessee Rules of Evidence permits the state to impeach a defendant with

his prior convictions if certain conditions are met. First, the prior conviction must be for a felony or a misdemeanor involving "dishonesty or false statement." Tenn. R. Evid. 609(a)(2); State v. Mixon, 983 S.W.2d 661, 674 (Tenn. 1999). Fewer than ten years must have elapsed between the defendant's release from confinement for the prior conviction and the commencement of the present prosecution. Tenn. R. Evid. 609(b). Additionally, the state must give the defendant reasonable pretrial notice of the impeaching convictions. Tenn. R. Evid. 609(a)(3). Finally, the trial court must find that the impeaching conviction's probative value on credibility outweighs its unfair prejudicial effect on the substantive issues. This final condition is the one at issue here.

In determining whether the probative value of a prior conviction on the issue of credibility outweighs its unfair prejudicial effect, a trial court should consider the similarity between the crime in question and the underlying impeaching conviction, as well as the relevance of the impeaching conviction with respect to credibility. Mixon, 983 S.W.2d at 674; State v. Farmer, 841 S.W.2d 837, 839 (Tenn. Crim. App. 1992). "To determine how probative a felony conviction is to the issue of credibility, the trial court must assess whether the felony offense involves dishonesty or false statement." State v. Waller, 118 S.W.3d 368, 371 (Tenn. 2003). If "the prior conviction and instant offense are similar in nature the possible prejudicial effect increases greatly and should be more carefully scrutinized." Long v. State, 607 S.W.2d 482, 486 (Tenn. Crim. App. 1980). A trial court's decision to admit a prior conviction under Rule 609 will not be reversed on appeal unless the trial court abused its discretion. State v. Blanton, 926 S.W.2d 953, 960 (Tenn. Crim. App. 1996).

In this case, we note that this court has previously determined that felony evading arrest is not a crime of dishonesty. State v. Bruce Marvin Vann, No. W2002-00161-CCA-R3-CD, 2003 WL 1702277, at *7 (Tenn. Crim. App., at Jackson, Mar. 31, 2003). However, as was the case in Bruce Marvin Vann, we conclude that the trial court properly ruled that the state could use the conviction for impeachment purposes. The trial involved a "swearing match" among witnesses, in which the jury had to assess the credibility of the state's witnesses, who testified that the defendant drove the truck, as well as that of the defendant's witness, who claimed that the defendant did not drive that evening. The credibility of the witnesses was the paramount issue. Thus, had the defendant taken the stand, this felony conviction would have had probative value as to his credibility. Additionally, as the trial court noted, there is no similarity between the prior offense and the offense for which the defendant was being tried. Therefore, we conclude that the trial court did not abuse its discretion in ruling that the state could use the defendant's felony evading arrest conviction for impeachment purposes. Thus, the defendant is not entitled to relief on this issue.

*Sentencing*

Finally, the defendant contends that the trial court improperly denied full probation or a full

-5-

alternative sentence.[1]  As stated above, the trial court sentenced the defendant as a Range I, standard offender, to two years, with the defendant to serve eighty days in jail and the balance of the sentence on community corrections.  A later order of the trial court reduced the jail term by twenty-five percent, or twenty days.  The defendant argues that serving "60 days incarceration would serve to eliminate the positive work history that he has established," and that the sentence is "improper given the work history and the testimony presented before the Court."  We disagree.

An appellate court's review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct.  Tenn. Code Ann. § 40-35-401(d) (2003).[2]  As the Sentencing Commission Comments to this section note, on appeal the burden is on the defendant to show that the sentence is improper.  This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, the court may not disturb the sentence even if a different result were preferred.  State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

However, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances."  State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).  In this respect, for the purpose of meaningful appellate review,

> [T]he trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence.  Tenn. Code Ann. § 40-35-210(f) (1990).

State v. Jones, 883 S.W.2d 597, 599 (Tenn. 1994).

In conducting its de novo review, the appellate court must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of

---

[1]Although the Motor Vehicle Habitual Offenders Act,  Tennessee Code Annotated §§ 55-10-601-618 (2004), states that a trial court may not suspend a sentence or fine under the Act, this court has ruled that alternative sentences are appropriate for persons sentenced under the Act.  State v. Martin, 146 S.W.3d  64, 70 (Tenn. Crim. App. 2004).

[2]We note that on June 7, 2005, the General Assembly amended Tennessee Code Annotated sections 40-35-102(6), -114, -210, -401.  See 2005 Tenn. Pub. Acts ch. 353, §§ 1, 5, 6, 8.  However, the amended code sections are inapplicable to the defendant's appeal because the defendant, who was arrested and indicted before the Sentencing Guidelines were amended, did not elect to be sentenced under the revised law.

sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf, and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210 (2006); see Ashby, 823 S.W.2d at 168; State v. Moss, 727 S.W.2d 229, 236-37 (Tenn. 1986).

*Length of Sentence*

Although not raised by either party, we must first address whether the trial court erred by imposing a two-year sentence. At the sentencing hearing, the trial court noted the existence of the following enhancement factors:

> (1) The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;
>
> (9) The defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community; and
>
> (11) The defendant had no hesitation about committing a crime when the risk to human life was high.

Tenn. Code Ann. § 40-35-114(2), (9), and (11) (2003). The trial court also applied the defendant's work history as a mitigating factor but ultimately imposed a two-year sentence, the maximum allowed for a person convicted of a Class E felony as a Range I, standard offender. See Tenn. Code Ann. § 40-35-112(a)(5) (2003).

Under the law as it existed before the 2005 amendment, unless enhancement factors were present, the presumptive sentence to be imposed was the minimum in the range for a Class E felony. Tenn. Code Ann. § 40-35-210(c) (2003). Tennessee's pre-2005 sentencing act provided that, procedurally, the trial court was to increase the sentence within the range based on the existence of enhancement factors and, then, reduce the sentence as appropriate for any mitigating factors. Id. at (d), (e). However, the Tennessee Supreme Court recently held that this system, which allowed the trial court to enhance a defendant's sentence based on factors that had not been found by a jury beyond a reasonable doubt, violated a defendant's Sixth Amendment rights as interpreted by the Supreme Court. State v. Gomez, 239 S.W.3d 733, 740-41 (Tenn. 2007) ("Gomez II") (citing Cunningham v. California, 549 U.S. ___, 127 S. Ct. 856, 860 (2007)); See also Blakely v. Washington, 542 U.S. 296, 301, 124 S. Ct. 2531, 2536 (2004) (quoting Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S. Ct. 2348, 2362-63 (2000)) ("'Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'"). Thus, the trial court's application of enhancement factors (9) and (11) to the defendant's sentence was improper.

However, in this case the presentence report details, and the trial court noted at the sentencing hearing, that the defendant had a record of over twenty convictions, including a felony conviction for a previous habitual motor vehicle offender violation, a felony conviction for resisting arrest, and numerous misdemeanor convictions for such offenses as assault, vandalism, public intoxication, and driving on a revoked license. In imposing an enhanced sentence, the trial court stated, "if I just go on your criminal history [your sentence] should be enhanced to two years." We agree with the trial court's reasoning and conclude that the defendant's extensive history of criminal convictions was enough to justify the trial court's imposing the maximum sentence in this case.

*Alternative Sentence*

We next consider the defendant's stated issue, whether the trial court erred in ordering the defendant to serve a sixty-day jail sentence before serving the rest of his term on community corrections. The defendant was convicted of a Class E felony and sentenced as a standard offender; thus, he was "presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6) (2003). However, this presumption does not entitle an offender who meets this standard to relief; rather, sentencing issues must be determined by the facts and circumstances presented in each case. See State v. Taylor, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987) (citing Moss, 727 S.W.2d at 235). Even if a defendant is presumed to be a favorable candidate for alternative sentencing, the statutory presumption may be overcome if (1) confinement is needed to protect society by restraining a defendant who has a long history of criminal conduct, (2) confinement is needed to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to people likely to commit similar offenses, or (3) less restrictive measures than confinement have frequently or recently been applied unsuccessfully to the defendant. Ashby, 823 S.W.2d at 169 (citing Tenn. Code Ann. § 40-35-103(1)(A)-(C)). A trial court should also consider a defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. Tenn. Code. Ann. § 40-35-103(5); State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). Furthermore, the trial court may consider a defendant's untruthfulness and lack of candor as they relate to the potential for rehabilitation. See State v. Nunley, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999); State v. Zeolia, 928 S.W.2d 457, 463 (Tenn. Crim. App. 1996); State v. Williamson, 919 S.W.2d 69, 84 (Tenn. Crim. App. 1995).

The presentence report contained a statement from the defendant in which he claimed that he was a passenger in the truck the night he was arrested, and he also claimed that he exited the truck by sliding out the driver's side door because the passenger-side door "would not shut good unless you were outside the truck." The defendant also stated that he told police that he was not driving that night and had done nothing wrong. The trial court noted that this statement went against the evidence produced at trial; therefore, the trial court found that the defendant was not being truthful and did not take responsibility for his actions. Based on these findings, as well as the fact that the defendant had previously served time on community corrections, the trial court concluded that the

defendant's potential for rehabilitation was "extremely low." In light of this evidence, we conclude that the trial court properly sentenced the defendant to a period of confinement before serving the rest of his sentence on community corrections. Thus, the defendant is not entitled to relief on this issue.

CONCLUSION

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____

_____     D. KELLY THOMAS, JR., JUDGE

-9-